### JOHN DEAN v. ROBERT THATCHER.

1. A judgment by confession, under the act entitled "An act directing the mode of entering judgments on bonds and warrants of attorney to confess judgments," is not void because it does not appear that an affidavit, as is required by the fifth section, had been made. It may be received in evidence without such affidavit, and cannot be impeached for that reason only, by a person not a party to it.

2. The affidavit is not a necessary part of the record of a judgment. From the absence of it upon the record, it will not be presumed that none existed. Every presumption will be made in favor of the regularity of the judgment of a court having jurisdiction of the subject matter.

3. A copy of the execution and return, certified by the clerk, is competent evidence. The return is an answer to the writ, and whatever the sheriff has so answered, whether in a statement annexed to the writ, or upon it, is a return, as far as it goes. The admissibility of the copy of the execution and levy, does not depend on the *sufficiency* of the return.

4. It is not necessary, in this state, in making a levy, that the officer should actually see the goods when the inventory is furnished by the defendant, with the assent of the plaintiff, nor that he should take them into possession. The property being at the time within his jurisdiction, it made no difference whether the list or inventory was

Dean v. Thatcher.

made in or out of the county. It was intended, by agreement of the defendant in execution, to be used by the sheriff, as the levy, and to perfect the lien of the execution upon property already affected by it.

---

In replevin. Error to the Circuit Court of the county of Warren.

This case was tried before Justice Van Dyke, and a jury of the county. On the trial, exceptions were taken by the counsel of the defendant to various rulings of the court, and also to the charge. A verdict having been given for the defendant, and judgment entered thereon, a writ of error was brought to this court to obtain a reversal. Such of the errors assigned as were relied on by the plaintiff in error, and considered by the court, appear in the opinion pronounced.

*J. Vliet* and *J. Vanatta,* for the plaintiff in error.

*J. G. Shipman* and *David A. Depue,* for defendant.

BEDLE, J. This was an action in replevin, brought in the Warren Circuit Court, by Robert Thatcher, late sheriff of Hunterdon county, against John Dean, to recover a sorrel mare, which Dean, as constable, seized in August, 1863, by virtue of an execution issued by Nathan Dilts, a justice of the peace of Warren county, upon a judgment recovered by Joseph Anderson against Hugh E. Anderson, in July, 1863, before said justice. Thatcher claimed the mare by virtue of a levy made by him, as sheriff, in May, 1861, under an execution issued out of the Court of Common Pleas of the county of Hunterdon, on the twelfth day of April, 1861, upon a judgment entered on that day, in favor of Daniel H. Anderson, against the said Hugh E. Anderson, by confession upon bond and warrant of attorney. Judgment was obtained by Thatcher for the recovery of the mare, and the

case is brought to this court from the Warren Circuit, upon the exceptions taken.

Upon the trial, the court admitted in evidence a duly certified copy of the judgment of Daniel H. Anderson, and of the execution and levy. It did not appear from the record, or in any other way by evidence, that the plaintiff in the judgment, his attorney, or agent, had made the affidavit required by the fifth section of the act entitled "an act directing the mode of entering judgments on bonds with warrants of attorney to confess judgments." The court charged the jury that the judgment was not void by reason of its not being accompanied by the affidavit; that it would be received in evidence without it, and could not for that reason only, be impeached by a person not a party to it. This is alleged for error. The plaintiff in error insists that the affidavit is a condition precedent to the entry of the judgment by the court or judge, and that without it the judgment would be void, or at least void as against Joseph Anderson, a creditor.

The judgment was entered in a court having general jurisdiction over the subject matter, and cannot be inquired into collaterally by a stranger to the record, upon the ground of the irregularity of the want of an affidavit. It was decided in this court, in the case of *Den, ex dem. Vanderveer* v. *Gaston & Mason*, 4 *Zab.* 820, that a judgment by confession, in the court of Common Pleas, without an affidavit, is only voidable, and cannot, on the ground of that omission, be attacked collaterally by a stranger to the record; that the judgment is admissible in evidence, without proof of the existence of the affidavit. This decision has been too long acquiesced in as the law of the state to be now disturbed. The doctrine is salutary, and should be adhered to. As to how far the want of the affidavit would affect the question of fraud in a collateral proceeding, it is unnecessary in this case to determine, but it cannot affect the admissibility of the judgment in evidence. It is a good

judgment even against a creditor without an affidavit, and cannot, for that reason only, be questioned.

It was also urged by the plaintiff in error, that in the absence of the affidavit upon the record, or of any proof that it was made, that it should be presumed that no such affidavit had been taken, and that upon the question of fraud, the defendant below was entitled to the benefit of that presumption, and that the court erred in charging the jury to the contrary. No such presumption can exist. The affidavit is not a necessary part of the record. Section six of the act directs that it "shall be filed with the other papers in the cause," but it is nowhere in the act required, either by express words or necessary inference, that it shall be entered at large in the judgment book. It is, no doubt, a correct practice to record the affidavit with the other papers, and the court would recommend all clerks to observe it. Yet it cannot be held that the recording of it is essential to the judgment. From the absence of the affidavit upon the record, it will not be presumed that none existed. The presumption is the reverse. Every intendment will be made in favor of the regularity of the judgment. It cannot be presumed that the judge who entered the judgment failed to do his duty, and to comply with the terms of the act. The contrary presumption is the true one. I see no error by the judge, in the admission of the record of the judgment in evidence or in his charge, as to the effect of it, without the affidavit, or that it will be presumed to have been taken. These considerations dispose of all the errors assigned, with reference to the judgment.

It is further argued, that the certified copy was not evidence of the execution and levy, because it did not appear that the execution had been returned according to law. The clerk certified that it was a certified copy of the execution, and the endorsements thereon, and the levy annexed, as full and entire as the same remained of record in this office. If the execution had not been returned by the sheriff, it could have been proved only by the production of the writ, except

in case of loss, but when returned, it, and the proceedings under it, became a part of the records of the court, and ought only to be proved in another court by a copy. To this execution was annexed the following statement: "By virtue of the annexed writ, I do levy upon and take in execution as the property of Hugh E. Anderson, the defendant therein named, the following goods and chattels." Then followed a list of the property levied upon, which included the mare; then a statement of the nominal value; the whole being dated, and subscribed with the name of the sheriff, as such. The admissibility of the copy of the execution and levy does not depend upon the *sufficiency* of the return. It depends upon whether the writ has *in fact*, been returned, so that it has become a part of the records of the court. If so the original could not, with safety or propriety, be produced. It is true, that it does not appear from the statement of the sheriff, what he did with the property; whether he had sold any part of it, or why he had not proceeded to make the money. These and other matters, which might properly have been contained in it, may involve questions between the sheriff and the plaintiff in execution, but cannot affect the question of the return of the writ in this case. The return is an answer to the writ, and whatever the sheriff has so returned, whether in a statement annexed to the writ, or upon it, is a return as far as it goes. The fact that the writ was returned to the court from whence it issued, is clear, and it was proper to prove whatever the sheriff had answered in obedience to it, by a certified copy. In this case the copy proved the execution and levy. The *levy* was part of what the sheriff should return; that was necessary for the plaintiff below, in making out his case. Beyond that, a further return could not have aided him, and was not required. The return was sufficient to admit the copy in evidence. It was said upon the argument, that there was no evidence that the execution had ever been in the hands of the sheriff, from the fact that his name was not subscribed to the endorsement of the receipt of it thereon. The object of

that endorsement is only to *better* determine questions of priority between different writs of execution. It is not in any way essential to the fact of the receipt of the writ by the sheriff. The court will presume, apart from the evidence of the witnesses, that the sheriff had the possession of the writ, and that he did what is returned, until the contrary appears.

It is also alleged that there was no legal levy. The facts on this point are stated in the charge of the court, as follows: "It appears that the sheriff, after he received the execution, proceeded to the house of the defendant, at Penwell, in Hunterdon county, where the property levied on then was, to make his levy, but finding him (the defendant) not at home, he went to the place where he then was, across the line into Warren county, at the hotel of Joseph Anderson, and when he found the defendant, he informed him that he had an execution against his property. The defendant asked him to go into a room, which he did, and the defendant then sat down and made out a list or inventory of his personal property, and handed it to him. The sheriff then took this list home with him, copied it off, and attached it to the execution as his inventory of the defendant's property, levied on by him." The court charged the jury that this was a sufficient levy, provided there was no fraud. This is assigned for error. It also appears from the testimony of Hugh E. Anderson, that he gave in the articles to the sheriff for the purpose of making a levy; that he gave the sorrel mare in to him to be levied on. There is no error in the charge upon this point. It is held in this state, that it is not necessary, in making the levy, that. the officer should actually see the goods, where the inventory is furnished by the defendant, with the assent of the plaintiff. *Caldwell et al.* v. *Fifield & Matthews,* 4 *Zab.* 161.

Such are the facts in the case before us. It is a frequent practice for sheriffs, in this state, to take levies in that way, and I can see no good reason to interfere with it. That it is not necessary to take the goods into the actual custody of

the sheriff, is well settled.  The objection that the list or inventory was furnished to the sheriff out of the county of Hunterdon, is not well taken.  The property, at the time of the levy, was within the jurisdiction of the sheriff, and he could have actually seized it, had it been necessary.  It made no difference whether the list was made in or out of the county.  It was intended, by agreement of the defendant in execution, to be used by the sheriff for the levy, and to perfect the lien of the execution upon property already af-fected by it.  The levy acquired its strength from the consent of the defendant, and not from the place where the list was furnished.  It is unnecessary now to determine the effect of a levy made by the officer without seeing the goods, and without the knowledge or assent of the defendant.  That question might depend much upon the particular circumstances of each case.

Several errors are assigned that have reference to the right of property in the plaintiff, necessary to maintain this action of replevin.  The sheriff had a special property in the mare, by virtue of his execution and levy, with the right of immediate possession.  The defendant was merely the bailee of the officer, and his possession was the constructive possession of the officer.  The sheriff could maintain his action of replevin for the mare, and his rights under the levy were not defeated, by the instructions to the sheriff, to leave the property levied on in the possession of the defendant for the time being, and not to proceed to a sale of it until further orders; nor by the evidence that the sheriff was unwilling to commence this suit until he was indemnified against costs, nor that the executors of Daniel H. Anderson, at his decease, by an arrangement with Hugh E. Anderson, sold at a vendue of the deceased, some of the articles levied on, and credited the proceeds upon the execution.  The only bearing these facts could have, would be upon the question of fraud, and did not in themselves defeat the rights of the sheriff under the levy.  Their application to the question of fraud was fairly stated by the judge upon the trial.  Whether

the sheriff was liable even to the plaintiff in execution for the safety of the property or not, did not disturb the levy. The plaintiff may have been willing to assume the risks himself of the safe keeping of the goods, and to release the sheriff therefrom. Yet, as against the defendant and others, the levy would be unaffected. The lien of the levy is not removed, because the sheriff considered he was not liable, whether, in fact, he was or not.

All the reasons for reversal are now disposed of, except that the court overruled the testimony of Hugh E. Anderson, a witness for the plaintiff below, upon his cross-examination, as to his having brought a suit in his own name, against Dean for taking the mare and depriving him of her use. This was not a proper cross-examination of the witness, and, as direct evidence, could not affect the plaintiff. The court cannot see that its exclusion interfered in any way with the substantial rights of the defendant.

There is no error upon any of the grounds alleged, and the judgment should be affirmed.

*For affirmance*—BEASLEY, C. J., BEDLE, CLEMENT, CORNELISON, ELMER, VAIL, VREDENBURGH. 7.

*For reversal*—KENNEDY. 1.

CITED in *Walker* v. *Hill's Executors*, 7 *C.·E. Gr.* 513.